## D. L. Stern, Trustee, *v.* William Stanton, Ellen I. Stanton and Joseph Weber, Appellants.

*Replevin—Sheriff's vendee—Distress—Landlord and tenant—Evidence.*

In an action of replevin by the sheriff's vendee for goods which, before their removal from the premises where they had been sold, were distrained for a quarter's rent which matured between the time of the levy and the sale, one of the questions in dispute was whether the goods could have been removed in the ordinary course of business before the distraint, and another was whether there was a demise to the plaintiff after the sheriff's sale. *Held,* that evidence as to the dimensions and contents of the buildings and as to whether plaintiff had offered to pay rent for the time during which he had occupied the premises was relevant.

*Sheriff's sale—Removal of goods—Reasonable time—Landlord and tenant.*

A sheriff's vendee of goods stored in a leased building has a reasonable time in which to remove the goods after the sale. Such time is not the shortest possible time in which they could be removed, but the time required to move them with diligence in the ordinary and usual manner of moving such goods. An extraordinary case, like a hurried removal of goods from a building on fire, furnishes no measure of the reasonable time required for the removal of such goods.

In an action by a sheriff's vendee to recover goods distrained after the sale, it appeared that the goods were turned over by the sheriff to the plaintiff on a Saturday evening, and were distrained on the following Thursday morning. Plaintiff testified that he was busy on Monday in picking out and delivering goods bought by other parties, and that he spent all of Tuesday in looking for a place to store the goods purchased by him. He also testified, but in this he was contradicted, that on Wednesday defendant

agreed that he should keep the premises for a month and pay rent therefor. There was testimony that it would take from five to twelve days to remove the goods. *Held*, (1) that the fact that the plaintiff did not remove any portion of the goods before Thursday did not work a forfeiture of his right to the reasonable time which the law allowed for their removal; (2) that a verdict and judgment for plaintiff should be sustained.

*Evidence—Examination of witnesses—Discretion of court.*

The allowance or disallowance of questions addressed to a witness on a re-examination of him for the purpose of obtaining a repetition of some part of his former testimony, is a matter within the sound discretion of the court, and, therefore, not subject to review, unless a palpable abuse of discretion appears.

*Evidence—Lost letter.*

Evidence of the contents of a letter cannot be given without proof of the loss of the letter, or at least of an effort and an inability to produce it.

*Practice, C. P.—Trial—Charge of court—Expression of opinion by judge.*

It is not error for a trial judge to express an opinion upon the weight of the evidence if the facts be left to the jury.

Argued Oct. 27, 1897. Appeal, No. 96, Oct. T., 1897, by defendants, from judgment of C. P. No. 1, Allegheny Co., March T., 1896, No. 291, on verdict for plaintiff. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Replevin for goods distrained for rent. Before COLLIER, P. J.

On May 14, 1892, William Stanton and Ellen I. Stanton, two of the above named defendants, demised to Danzinger & Company the premises situated at Nos. 42 to 50 Sixth street, and also upon Penn avenue, near Sixth street, in the city of Pittsburg, for the term of five years from April 1, 1893, at the annual rental of $24,000, payable in quarterly instalments of $6,000 each, in advance, on the first days of April, July, October and January of every year during the term. The premises thus let consisted of the first stories and cellars of Nos. 42, 44, 46, 48 and 50 Sixth street, the first and second stories and cellar of the Penn avenue building, two rooms over the back part of stores Nos. 46 and 48 Sixth street and one over No. 50 Sixth street. From April 1, 1893, to the time of the sheriff's sale hereinafter mentioned, Danzinger & Company occupied and used those store-rooms and the premises described in said lease as one establishment, where they carried on an extensive retail trade as

merchants, having a large and varied stock of dry goods, notions, millinery, men's and women's furnishing goods, women's coats, cloaks and wraps, light household furnishings, pictures, bric-a-brac, china and glassware. This stock was estimated to be worth at the date of the sheriff's sale from $70,000 to $75,000, and almost the entire stock was purchased by the plaintiff at the sheriff's sale referred to. On December 24, 1895, this stock was in position upon the shelves and counters of the various storerooms referred to, the china and glassware and similar goods being in the basement. Danzinger & Company, at different times during the quarter beginning October 1, and ending December 31, 1895, paid the rental of $6,000 for that quarter, so that on December 24, 1895, no rentals under the lease were due. On or shortly before December 24, 1895, Danzinger & Company confessed judgments to twelve creditors, aggregating between $50,000 and $60,000, and on December 24, 1895, executions upon all of those judgments were issued and placed in the hands of the sheriff, who, on December 25, 1895, seized all the goods of Danzinger & Company in the said stores, closed the establishment and advertised the stock for sale. In pursuance of such advertisement, the sheriff, on the 2d, 3d and 4th of January, 1896, proceeded to sell the entire stock contained in those stores at public sale, closing his sale on the morning of January 4, 1896. On January 4, 1896, D. L. Stern, the plaintiff, having by an arrangement previously made with the execution creditors referred to, bought almost the entire stock of the several stores as trustee for those creditors, received possession of the goods thus sold him by the sheriff and began an inventory and arranged his purchases to put the stock in order, returning to the shelves such goods as had been taken from them for the purposes of sale, and which had not been sold to others. On January 9, 1896, the goods being then upon the demised premises, and rent for the quarter ending March 31, 1896, having fallen due January 1, 1896, and then remaining unpaid, the landlords, William and Ellen I. Stanton, issued their landlord's warrant addressed to Joseph Weber, constable, as bailiff, and he by virtue of such warrant, on the morning of that day, levied upon the stock so purchased by Mr. Stern and remaining upon the demised premises as liable to distraint for said rental. Plaintiff immediately sued out his writ of replevin,

gave bond to the sheriff, and the goods distrained were delivered to him by the sheriff and the cause proceeded to trial under the pleadings.

The issues presented at the trial were whether a reasonable time had been allowed plaintiff to remove his goods, whether or not there was a demise to him after the sheriff's sale and the amount of rent due, and whether Mr. Stern had stated, as alleged by defendants, to Mr. Watterson, who represented the defendants, that he did not intend to remove the goods from the premises but would remain where he was and sell the goods there, which was denied by the plaintiff and his witnesses.

At the trial plaintiff testified as follows:

" Q. Now, Mr. Stern, what kind of goods were they that you bought at that sale? A. They were fragile goods, bric-a-brac, china, glassware, and various things; notions and furnishing goods and stuff of that kind. Q. Was it a large stock of goods? A. Yes, sir, it was. Q. The goods that you bought were contained in what space? Tell us the number of the stores and the size of them. A. There were five stores, I think, on Sixth street, and a large one on Penn avenue, and the upper floor on Penn avenue, and the basement or cellar under all of them. Q. What was the frontage on Penn avenue? A. I should think about a hundred feet. Q. Mr. Stern, you say the frontage—"

Counsel for defendants suggest that the sheriff's sale book be produced.

Counsel for plaintiff do not think it necessary now.

Counsel for defendants then object to the testimony of this witness as incompetent as to the contents of that store, when the record of the sheriff's sale is in existence and is the best evidence of what that stock consisted of.

By the Court: The witness may show the nature of the goods and whether or not he had reasonable time to take them away.

The objection is overruled and bill sealed for defendants. [1]

" Q. Now, Mr. Stern, I will ask you this question: At the end of the month of January,—you have said it was not occupied any longer than the end of January,—did you offer to pay the $2,000 rent to the defendant? "

Objected to as immaterial and irrelevant.

By the Court: The objection is overruled and bill sealed for the defendants.

"A. Yes, sir. I did offer to pay them and offered the keys to Mr. Gloninger and offered to pay him. Q. How much? A. $2,000 for the time I occupied the premises. Q. According to your agreement? A. To pay him for the time I occupied it. Q. According to the agreement? A. Yes, sir. Q. Did they refuse the $2,000? A. Yes, sir." [2]

When W. A. Hoeveler, a witness for defendant, was on the stand, he testified: " Q. Taking a store or a series of stores of the character of these Danziger stores as described by Mr. Gloninger and the other testimony which you have heard in this case, having a total area of twenty-six thousand seven hundred feet or thereabouts, and arranged with partitions and shelving as described about the various storerooms, placed in the usual way and at the usual height, filled with goods and goods upon the counters and elsewhere about the establishment, including the basement, in which was contained china, bric-a-brac and such articles, and the goods being of the character described in the sales-book shown you, what, in your judgment, would be the time in which you could remove those goods from those premises, if called upon to do so in the ordinary course of business, by moving them in the ordinary way, without your previously packing them, but just taking charge of them from the counters and from the shelves and from the premises as you found them and removing them to a building elsewhere, say in the city of Pittsburg, and depositing them there? A. To take them to my warehouse and put them into store so they could be removed again, and keep the necessary record, with my outfit, would take five days. Q. Of what does your outfit consist? A. It consists of,—I would use four vans, four wagons, and the necessary horses and the necessary men and the necessary clerks. Q. That is four vans, four wagons, and the necessary men to man those vans and wagons ? A. Yes, sir. Q. You just speak of your own equipment? A. Yes, sir. Q. If you were to take additional equipment for removing them, could you remove them in a proportionately shorter time ? "

Objected to.

By the Court: The objection is sustained and bill sealed for defendants. [3]

A. V. D. Watterson, a witness for defendant, was asked in chief, after he had been cross-examined: " Q. I want to clear

up a matter that counsel left somewhat beclouded by asking you about this talk about the rent. How did it come that you talked about the rent when there was nothing said about it by Mr. Stern? Did you not testify in chief that Mr. Stern did say at the first interview you had with him that he wanted you to agree to reduce the rent and let him stay on in the premises?"

Objected to, unless it is any new matter; he has been over all that.

By the Court: The objection is sustained and bill sealed for defendants. [4]

Defendants offered to prove by Mary M. Hedden that the witness is employed in the office of Watterson & Reid as stenographer and typewriter, and was so employed on January 9, 1896; that upon January 9, 1896, after the issuing of the landlord's warrant in this case, and for the purpose of corroborating the witnesses on behalf of the defendants here in surrebuttal, Mr. Watterson, the witness who has just left the stand, dictated a letter to William Stanton, one of the defendants and one of the landlords in this case, wherein he sets forth in detail—

Counsel for plaintiff object to counsel stating what was in the letter.

By the Court: The objection is sustained and bill sealed for defendants. [5]

Mr. Watterson was then called by defendants and asked whether he did or did not, on January 9, 1896, write a letter to Mr. William Stanton, Pasadena, California, dictated to Miss Hedden, which set forth the facts as narrated by him in his examination in chief in relation to this matter.

Objected to because it asks for the contents of the letter.

By the Court: The objection is sustained and bill sealed for defendants. [6]

J. Ledlie Gloninger, a witness on behalf of defendants, testified: "Q. You saw the stock there, did you? A. In the evening of the eighth I saw the stock, passing through the store and looking toward the Sixth street store. Q. Did you see any packing cases there or any preparations for moving? A. No, sir, the store appeared to be in perfect order, ready for business. Q. Have you any knowledge of the moving of large stocks of goods, from either observation or practical experience? A. I never had any practical experience in moving goods. I know

that tenants manage frequently to move their goods in a hurry. I can cite a case of that kind if I may. Q. Is this a fact that came under your personal observation? A. Yes, sir. Q. Of the removal of a large stock of goods? A. Yes, sir. Q. Larger or smaller than this? A. The floor area of the establishment was almost twice the size of this. Q. Was it filled with goods? A. Not exactly; not entirely; it was well filled. I refer to the Marshell building, immediately opposite the Penn avenue portion of this building. Q. How many stories high is it? A. It is a five-story, fire brick building, sixty feet front by a hundred in depth, with an annex in the back sixty feet by two hundred and twenty, I think; what used to be the old rink. Q. You say it contained about twice the floor area of the Danziger building? A. Almost twice. Q. The Danziger is 26,700? A. Well, that contained about 50,000. Q. Now, from your own personal knowledge, do you know how long it took the tenants of that building to remove their goods? A. I know within certain limits; I don't exactly know how long; I know they were moved in a very short time; it is impossible to answer in that form. Q. What was the character of the goods there? A. He had chinaware, glassware, groceries and various other goods; flowers, plants, meats; in fact, a great many things, almost all things of ornament, or edible, for use of the household; house furnishing goods of various kinds. Q. How did it compare with the similar stock as carried by Danziger & Company? I mean as to the bric-a-brac, glassware and so on?"

By the Court: " Q. That kind of glassware was mostly ornamental, in Danziger's stock? A. Yes, sir, it was ornamental. Marshell's was more dishes and glassware of that kind, and household utensils. Q. Was it of a similar kind? A. Portions of it were similar. Of course it was not the same; one was primarily a grocery store and the other was a notion store."

By Mr. Reid: " Q. Do you know how long it took them to remove that stock, of the description which you have given as contained in the Marshell building?"

Objected to; first, because the stock is not a similar stock at all; and second, because, as we all know, it was an extraordinary case. It was a case where the tenant saw fit to steal away the goods over night in order to keep them away from the landlord's levy.

By the Court: The objection is sustained and bill sealed by defendants. [7]

Joseph Weber, a witness on behalf of defendants, testified: " Q. Mr. Weber, have you had a large experience in selling out stocks of goods of various characters in this city? A. Yes, sir. Q. Give the court and jury an idea of what experience you have had in that direction? A. I have had a great many stores but not quite so large as this one, and as a general rule we would get the goods out the same day we would sell them. Q. Can you state from your knowledge of such stocks as that and such sales, if you have such knowledge, what would be a reasonable time in which to remove the stock of goods that was in the Danziger stores? "

Objected to as incompetent and irrelevant.

By the Court: The objection is sustained and bill sealed for defendants. [8]

The court charged in part as follows:

[Now, did he have a reasonable time to remove the goods? The sale was made on January 2, 3, and 4, and on January 9, the warrant was issued. Could any reasonable man, in that short time, have removed those goods in the ordinary way? Not working day and night, and employing a great number of men, but in the ordinary way, being diligent, could he have removed those goods in that time? You have evidence on both sides as to that and will weigh it carefully, because that is what he was bound to do if he wanted to get rid of the responsibility for the rent, and he is bound to know the law. If he had not reasonable time, then, on that ground he would be protected, if there was nothing else, and you will judge of that. It does not seem to me that the evidence is very clear, but that that was a pretty short time for the removal of so large a stock of goods, but that is for the jury.] [9]

Plaintiff's second point and the answer thereto were as follows:

If the jury believe that the time intervening between the close of the sheriff's sale and the issuing of the landlord's warrant, viz: from the evening of Saturday, January 4, to the morning of the 9th, was not a reasonably sufficient time to remove the goods in question from the said premises, then their verdict must be for the plaintiff. *Answer:* That is affirmed, unless the

jury believe that the plaintiff informed defendants' attorney or agents, the day before the issuing of the landlord's warrant, that he did not intend to remove them, but intended to stay until he could sell them. [10]

Defendants' points and the answers thereto among others were as follows :

2. It was the duty of the sheriff's vendee, D. L. Stern, trustee, the plaintiff in this case, as soon as reasonably practicable after the delivery of the goods to him by the sheriff, to begin or attempt to begin the removal of such goods from the premises of M. H. Danziger & Company, and an interval of several days having been permitted by said vendee to elapse after such delivery to him, during which no attempt to remove them was either made or commenced, such failure of plaintiff to remove said goods, or to attempt to remove the same, was laches, and plaintiff cannot avail himself of it in this case by alleging that the time for removal of said goods previous to the levy thereon by the landlord was too short. *Answer:* Refused. [11]

5. As a matter of law, the fact that plaintiff, D. L. Stern, did not remove, or attempt to remove the said goods, from said demised premises between the date of the delivery of said goods to him by the sheriff and of the execution thereon of the landlord's warrant, (if the jury should find such facts from the evidence), entitled the landlords in this case to recover for the amount of rentals due at the time of issuing and levying said landlord's warrant, unless defendants, their counsel or agents, agreed with plaintiff that he might remain upon said premises and keep his goods therein for the purposes of sale. *Answer:* Refused. [12]

Verdict and judgment for plaintiff and the sum of 6 cents damages and costs. Defendants appealed.

*Errors assigned* were (1–8) rulings on evidence, quoting the bill of exceptions; (9–12) above instructions, quoting them.

*A. B. Reid*, with him *A. V. D. Watterson*, for appellants.— Letters frequently disclose facts which are well calculated to unfold and develop the nature of the transaction, and they should be admitted as part of the res gestæ, notwithstanding they contain declarations in a party's favor: Beaver v. Taylor,

68 U. S. 637; McCotter v. Hooker, 8 N. Y. 497; Jewell v. Jewell, 42 U. S. 219; Bateman v. Bailey, 5 T. R. 512; Gilchrist v. Bale, 8 Watts, 355.

Under the authority of Gilbert v. Moody, 17 Wendell, 354, the liability of the goods of Stern to distraint upon our landlord's warrant was fixed, although he may not have had time in the four or five days which elapsed after delivery and before distraint to remove, at his leisure, all of the stock purchased by him: Leaming v. Wise, 73 Pa. 173; Morgan v. McKee, 77 Pa. 228.

The property of a stranger found on the premises is as a general rule liable to distress: Kleber v. Ward, 88 Pa. 93; O'Donnel v. Seybert, 13 S. & R. 57; Kessler v. McConachy, 1 Rawle, 435; Karns v. McKinney, 74 Pa. 387; Brown v. Sims, 17 S. & R. 138; Page v. Middleton, 118 Pa. 546.

A landlord may distrain on chattels or crops remaining on the premises after sale on execution, if there be an unreasonable delay in removing them: Jackson & Gross on Landlord and Tenant, sec. 231, Pl. 24; Pierce v. Scott, 4 W. & S. 344; Taylor on Landlord and Tenant, sec. 593; Gilbert v. Moody, 17 Wend. 354; Furbush v. Fisher, 40 Legal Int. 286.

The doctrine announced in Gilbert v. Moody, 17 Wendell, 354, is based upon and follows a long line of English cases, among which are the following: Wright v. Dewes, 1 Ad. & El. 641; Eaton v. Southby, Willes, 131; Briggs v. Sowry, 8 M. & W. 729; Gwilliam v. Barker, 1 Price, 274, 277; Wharton v. Naylor, 12 Q. B. 673 (A & E. N. S.); Blades v. Arundale, 1 M. & S. 711; Peacock v. Purvis, 2 Brod. & Bing. 362, etc.; Smith v. Russell, 3 Taunt. 400.

*A. Israel*, with him *Josiah Cohen*, for appellee.—In such a case as this the goods of a purchaser at sheriff's sale, though remaining on the premises, are not liable for rent accruing after the sheriff's levy, owing by the defendant in the execution: Howe Sewing Machine Co. v. Sloan, 87 Pa. 438; Riddle v. Welden, 5 Whar. 9; Cadwalader v. Tindall, 20 Pa. 422; Briggs v. Large, 30 Pa. 287; Brown v. Sims, 17 S. & R. 139.

OPINION BY MR. JUSTICE McCOLLUM, Feb. 7, 1898:

The assignments from the first to the eighth inclusive com-

plain of rulings on offers of evidence. The first and second are based on the admission of evidence, and the third, fourth, fifth, sixth, seventh and eighth on the exclusion of it. The evidence objected to and admitted was clearly competent. It related to the dimensions and contents of the leased buildings, and to the offer of the plaintiff to pay a month's rent. It was unquestionably relevant to the issues of fact raised by the pleadings.

The objections to the evidence offered and excluded were well taken. It was competent for the defendants to show that the plaintiff had a reasonable time in which to remove the goods after the sale and before they were distrained. But the reasonable time allowed for their removal is not the time within which they might possibly be removed by extraordinary effort.

It is not the shortest possible time in which they could be removed, but the time required to move them with diligence in the ordinary and usual manner of moving such goods. Hence, evidence showing what might possibly be accomplished in an emergency calling for extraordinary effort and the employment of unusual methods is not strictly relevant.

The allowance or disallowance of questions addressed to a witness, on a re-examination of him, for the purpose of obtaining a repetition of some part of his former testimony is a matter within the sound discretion of the court, and therefore not subject to review, unless a palpable abuse of the discretion appears. The questions addressed to Watterson on the defendants' proposed re-examination of him were of this nature, and the disallowance of them by the court affords no reasonable ground for complaint.

It is by no means certain that a letter written and sent by Watterson & Reid to their clients on the day the goods were distrained would be competent or relevant evidence in this issue. It is clear, however, that neither the person who wrote it nor the person who dictated it could testify to its contents without proof of its loss, or at least of an effort and an inability to produce it. It is sufficient to say of the rejection of the offer to prove the contents of the letter that the grounds for the introduction of such evidence if relevant and competent were not laid.

It is obvious that neither Gloninger nor Weber was quali-

fied to define the reasonable time required for the removal of
the goods in question, and that the clandestine and hurried re-
moval by a tenant of his goods from the Marshall building in
the nighttime was a circumstance not material or relevant to
the issue to be determined by the jury.   An extraordinary case,
like a hurried removal of goods from a building on fire, fur-
nishes no measure of the reasonable time required for the re-
moval of the goods in this case.

For the reasons above stated we conclude that there is noth-
ing in the rulings complained of in the assignments referred to
which requires or would justify a reversal of the judgment.
The 9th and 10th assignments complain of instructions to the
effect that the plaintiff was entitled to a reasonable time in
which to remove the goods, and the 11th and 12th assignments
complain of the refusal of the court to hold that the alleged
inaction of the plaintiff during a part of that time authorized
the defendants to distrain the goods before the expiration of it.
The court, however, in the general charge and the answer to
the plaintiff's second point, virtually instructed the jury that if
they found from the evidence that the plaintiff, on the day be-
fore the goods were distrained, informed the defendants or
their agents that he did not intend to remove the goods, and
that it was his purpose to keep them where they were until he
could sell them, he could not recover.   It seems to us that this
instruction was as favorable to the defendants as they could
reasonably expect.   The goods were turned over by the sheriff
to the plaintiff Saturday evening, January 4, and they were dis-
trained by the defendants Thursday morning, January 9.   As
the reasonable time allowed for their removal did not include
the nighttime or Sunday it must be held to date from the 6th
of January.   The plaintiff testified that on the 6th they were
busy in picking out and delivering the goods bought by other
parties, and that he spent all of the next day in looking for a
place to put the goods purchased by him.   On the 8th of Jan-
uary there was an interview between the parties in which the
defendants were represented by Watterson, Black and Gloninger,
and the creditors for whom the goods were purchased were
represented by the plaintiff, Cohen and Israel.   The plaintiff tes-
tified distinctly and positively that at this interview it was
agreed that he should occupy the premises, prior to April 1,

for such time as he might need them for the disposal of the goods, and that for the time he actually occupied them for that purpose he should be chargeable with and pay rent at the rate of $2,000 per month. The testimony of Cohen and Israel was equally distinct and positive in support of the agreement as stated by him, while their testimony and his was flatly contradicted by the testimony of Watterson, Black and Gloninger. Of course if the jury found the agreement as claimed by the plaintiff that of itself entitled him to recover. On the question whether he had a reasonable time in which to remove the goods before they were distrained there was not much conflict in the evidence. The plaintiff testified that he had an experience of fourteen years in removing goods, and that it would take from two to three weeks to remove the goods in question if proper care was exercised to prevent damage to them. Rothschild, who superintended the removal of the goods to Kaufman's testified that it took from ten to twelve days to remove them with from five to ten wagons and from twenty to thirty men, and that a larger force could not "have been practically put upon the work." Purvis, who was employed at Kaufman's was charged with the duty of receiving and caring for the goods as they were brought there, and he testified substantially as Rothschild did as to the time taken and the force employed in removing them. Hoeveler, a witness called by the defendants, had a storage house and vans and wagons for moving goods. He had been in the business seven years, and he testified that it would take five days to move the goods to his warehouse and put them into store so they could be removed again, and that in removing them he "would use four vans, four wagons and the necessary horses, men and clerks." His estimate of the time within which he could remove them did not include the time required to suitably pack and arrange them for removal. The foregoing summary of the evidence relating to the defendants' claim that the plaintiff informed them on the 8th of January that he did not intend to remove the goods; to the claim of the plaintiff of an agreement under which he was to occupy the premises until he disposed of them; and to the reasonable time required for the removal of them, sufficiently discloses the issues of fact between the parties.

It is settled by the verdict that the defendants' claim that

the plaintiff informed them that he did not intend to remove the goods was unfounded; and it is shown by the uncontradicted testimony in the case that the plaintiff did not have a reasonable time in which to remove the goods before they were distrained. It is practically conceded by the defendants that the plaintiff did not have sufficient time in which to pack and remove the goods before the 9th of January, but they contend that as he did not pack and remove any of them before that time he lost or forfeited his right to the reasonable time the law allowed for their removal. Is their contention sound? We are clearly of the opinion that it is not. If it is, it logically follows that the defendants could have distrained the goods on the 7th of January, although the reasonable time required for their removal was ten days. They claim that there is authority for this contention in Gilbert v. Moody, 17 Wendell, 354. In that case the goods sold and subsequently distrained were in a dwelling house, and consisted of household furniture which could readily have been removed, and no reason or excuse for delay was offered on the part of the plaintiff. The sale was made by the sheriff in the afternoon of Saturday, the 14th of July, and the goods remained on the leased premises until Tuesday morning, the 17th of July, when they were taken by the defendants under a distress warrant for rent. " The goods might have been conveniently removed on Saturday afternoon, at a trifling expense." NELSON, C. J., in delivering the opinion of the Court, said : " Goods levied upon by execution are considered in custodia legis until the proper time for the sale and a reasonable time after the sale for the purchaser to remove them: 2 Brod. & Bing, 362; 1 Maule & Sel. 711; Bradby on Dist. 84. What is a reasonable time is a question of law when there is no dispute about the facts. It is apparent from the evidence that the removal of the goods could have been effected in a few hours; the whole of Monday was clearly a sufficient time for that purpose." It will be noted that in the case cited the goods were distrained after the reasonable time for their removal had expired, and no reason or excuse was assigned for the delay. It bears no resemblance in its facts to this case, and it furnishes no support for the contention based on the defendants' second and fifth points.

Further reference to or discussion of the evidence affecting

the material issues in the case is unnecessary. The excerpt from the charge on which the 9th assignment is based does not require special consideration. Whether the excerpt is considered by itself or in connection with the rest of the charge is unimportant, because there is no material error in it. It needs no citation of cases to prove that it is not error to express an opinion upon the weight of the evidence if the facts be left to the jury.

All the assignments are overruled.

Judgment affirmed.