J-A07045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: THE ESTATE OF PERRY M. MCKEAN, DECEASED JUNE L. CONFER, ADMINISTRATRIX | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LARRY HAINES | |
| | No. 1396 MDA 2013 |

Appeal from the Order Entered July 12, 2013
In the Court of Common Pleas of Centre County
Orphans' Court at No: 2012-0378

BEFORE: GANTMAN, P.J., DONOHUE, and STABILE, JJ.

MEMORANDUM BY STABILE, J.: **FILED AUGUST 20, 2014**

Appellant Larry Haines appeals the July 12, 2013 order of the Court of Common Pleas of Centre County dismissing Appellant's exceptions and ordering him to return certain firearms and life insurance proceeds. After review, we affirm.

The factual and procedural background of this matter can be summarized as follows. Perry M. McKean (McKean) lived in Centre County. In April 2011, McKean granted Appellant a "durable power of attorney for finance of McKean." In March 2012, as a result of a fall, McKean was taken to a hospital in Clinton County. Upon release from the hospital, McKean became a resident of the Heartland Personal Care Home, Clinton County. In May 2012, Appellant filed a "Petition to Adjudicate Incapacity and Appoint a

Plenary Guardian" with the trial court in Clinton County asking the court to declare McKean incapacitated and appointing Appellant as the "Plenary Guardian of the Estate and Person" of McKean.[1]  After a hearing, the trial court declared McKean incapacitated and appointed Appellant as plenary guardian of the estate and his person (May 31, 2012).  Shortly after the appointment, McKean died intestate, survived by 35 heirs at law.

In August 2012, Appellee June L. Confer, the Administratrix of McKean's Estate, petitioned the trial court in Centre County for grant of letters of administration, which the trial court promptly granted.  In February 2013, Appellee filed a "Petition for Citation of Guardian" with the trial court in Centre County seeking the issuance of "a citation to [Appellant] to show cause why he should not account for all funds spent, with receipts and return other assets of [McKean]."  Petition for Citation of Guardian, 2/8/13, at 2.  The trial court scheduled a hearing on the petition for April 27, 2013. The scheduling order was mailed and received by Appellant.  Appellant appeared at the hearing *pro se*.

_____

[1] In the petition, Appellant alleged, *inter alia*, McKean "suffers from dementia to the degree that he cannot make or communicate responsible decisions about his person or his estate[,]" and "[i]t is not likely that [McKean]'s conditions will ever improve to a level where he will not need a guardian of his person and his estate."  Petition for Adjudication of Incapacity and for the Appointment of a Plenary Guardian of the Estate and Person of Perry M. McKean, 5/3/12, at 2, 3.

At the April 27, 2013 hearing, Appellant testified, *inter alia*, that: (i) McKean granted him a power of attorney sometime in 2011, (ii) McKean suffered from dementia, as he had indicated in his "Petition to Adjudicate Incapacity and Appoint a Plenary Guardian," (iii) "the doctor [is] the one that alerted me. He said he has dementia and he said he has got it bad," N.T., 4/27/13, at 13-14; (iv) in January 2012, he named himself as a beneficiary of a life insurance policy, "under [McKean's] direction," *id.* at 16, and as such, after McKean's death, he collected $16,000, *id*.; (v) in January 2012, Appellant took possession of the firearms, as a gift from McKean, *id.* 15, 18; (vi) both gifts (insurance proceeds and firearms) were made by McKean while he was suffering from dementia, *id.* at 16, 21, and (vii) a caseworker for the Office of Aging, because of McKean's conditions, "wanted to put [McKean] in personal health care a year and a half before [January 2012]." *Id.* at 15.

On May 9, 2013, the trial court issued an order and findings directing Appellant to return the firearms and the life insurance proceeds. On May 20, 2013, counsel for Appellant filed exceptions to the May 9, 2013 order. As a result, the trial court vacated the May 9, 2013 order. Appellee, in the meantime, also filed an answer to the exceptions. A hearing was scheduled to address the exceptions and the answer for June 25, 2013. At the hearing, the trial court heard from both counsel, but denied Appellant's request to supplement his own testimony. In particular, the trial court noted Appellant testified at the previous hearing, was given ample opportunity to address the

court, and there was nothing else Appellant could add. Regarding the additional evidence Appellant intended to offer (doctor report and bank records), the court noted the evidence would not be admissible (and counsel for Appellant acknowledged so). The trial court, nonetheless, allowed Appellant to place in the record (as an offer of proof) a "Time Frame [chronological list of events relevant to the matter] and Pertinent documents [several documents Appellant intended to introduce in evidence through his testimony]." N.T. 6/25/13, at 14. After hearing from both counsel, the trial court confirmed the May 9, 2013 order, adding some language pertaining to the insurance proceeds. "Specifically, this [c]ourt ruled that [Appellant] must return certain firearms and that the life insurance policy proceeds be returned with six (6) percent annual interest." Trial Court Opinion, 10/4/13, at 2. This appeal followed.

Appellant raises the following claims for our review:

1. Did the [trial court] commit [an] abuse of discretion or error of law by determining that the April 17, 2013, proceeding would be Appellant's only opportunity to present evidence on the allegation that the pre-guardianship transfer by Mr. McKean to Appellant were invalid and that therefore the gifted guns and the life insurance proceeds had to be turned over to Mr. McKean's Estate, especially where the only Petition filed referred only to post-guardianship activities and did not mention life insurance at all?

2. Was the evidence received at the April 17, 2013, proceeding insufficient, as a matter of law, to void Mr. McKean's gift of guns and his life insurance beneficiary designation?

Appellant's Brief at iv.

- 4 -

The first claim, stated clearly, is whether the trial court erred in refusing to reopen the proceeding to allow Appellant—who acted *pro se* up to that point—to introduce additional evidence after he retained counsel. We review the trial court's denial in reopening the proceeding as follows:

> The general rule is that "a court may, in its discretion, reopen the case after a party has closed for the taking of additional testimony, but such matters are peculiarly within the sound discretion of the trial court, and a denial of (an) opportunity for a rehearing for the purpose of introducing additional evidence will not ordinarily be disturbed." ***Commonwealth v. Deitch Co.***, 449 Pa. 88, 295 A.2d 834 (1972). Such a ruling will be disturbed only if the court has abused its discretion. ***Thomas v. Waters***, 350 Pa. 214, 38 A.2d 237 (1944). ***See also Van Buren v. Eberhard***, 377 Pa. 22, 104 A.2d 98 (1954).

***In re J.E.F.***, 409 A.2d 1165, 1166 (Pa. 1979).

Despite the allegations of "denial of process," "prejudice," "manifest injustice," "elemental deprivation of notice and opportunity to be heard," "manifestly prejudicial and biased conduct" of trial court judge, Appellant's brief is devoid of any citation to authorities supporting his claim the trial court should have provided him with another opportunity to supplement the record once he retained counsel.

Nonetheless, the claim is without merit for several reasons. Appellant, who chose to appear and proceed *pro se* up to the April 17, 2013 hearing, cannot now blame others for the consequences of his choices. ***See Branch Banking & Tr. v. Gesiorski***, 904 A.2d 939, 942 (Pa. Super. 2006) ("[A] *pro se* litigant is not entitled to any particular advantage because he lacks legal training; any layperson choosing to represent himself in a legal proceeding

must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing.") (citation omitted).

The trial court also noted Appellant "was in no way denied an opportunity to present evidence or testify during the April 17 [h]earing. Rather, [Appellant] simply did not utilize the opportunity this [c]ourt granted to him." Trial Court Opinion, 10/4/13, at 6. The trial court asked Appellant "numerous times at the end of April 17 [h]earing whether he had any evidence or issues to bring before [the trial court]. [Appellant] brought no further evidence or testimony at this time." *Id.* at 7. The trial court also noted:

> Further, [Appellant] was indeed encouraged to obtain counsel, but in no way did this allow [Appellant] a second bite at the apple. Rather, this court urged [Appellant] to retain an attorney to aid in dealing with any consequences of the April 17 [h]earing. [Appellant] did, in fact, retain counsel after the April 17 [h]earing, but this retention cannot permit [Appellant] a second chance to prove the case.

*Id.* at 8 (citation to record omitted).

Appellant also fails to mention the trial court held a hearing on June 25, 2013 to address Appellant's exceptions to the May 9, 2013 order.[2] At that hearing, the trial court denied Appellant's request to supplement his testimony because it had heard sufficient evidence from Appellant himself at

---

[2] We are unsure how the trial court could vacate the May 9, 2013 order and, at the same time, hear exceptions to an order which just had been vacated. However, neither the parties nor the trial court raises this issue.

the prior hearing on the issue of McKean's condition. N.T. 6/25/13, at 11. The trial court, however, appeared willing to consider other evidence pertaining to the issue of McKean's condition at the time when the gifts were made. The evidence, however, as acknowledged by Appellant's counsel, was inadmissible. *Id.* at 10-11.

In light of the foregoing, we conclude the trial court did not abuse its discretion in denying Appellant's request to reopen the proceeding to allow Appellant to supplement his testimony.

Appellant also argues an additional hearing was necessary because the petition for citation of guardian concerned only post-guardianship gifting.[3] It was only at the April 17, 2013 hearing—set for Appellee's petition for citation of guardian—Appellant "learned" the hearing would also cover pre-guardian activities. The issue is without merit.

Appellant omits some important procedural details, which are important to understand what actually happened. As a review of the notes of testimony of the April 17, 2013 hearing reveals, some of the information gathered at the hearing was not available to Appellee at the time of the filing of the petition. At the hearing, after Appellant disclosed he removed the firearms in January 2012 and that around that same time he also named himself beneficiary of a life insurance, there was some discussion, on the

_____

[3] As noted above, the trial court of Clinton County appointed Appellant as guardian on May 31, 2012.

record, on how to proceed with the information gathered at the hearing. Specifically, Appellee's counsel thought he would need to file a separate petition requesting the return of the firearms and needed to consult with his client regarding the insurance proceeds. The trial court, however, suggested that Appellee's counsel ask Appellant whether he would be willing to return the firearms voluntarily, without the necessity of filing another petition. So, he did. Appellant replied, apparently reiterating the firearms were a gift. The trial court then noted the gift was made by an incapacitated person to a person in a position of trust, which was not allowed under the "new power of attorney act." N.T., 4/17/13, at 20. Both the trial court and counsel for Appellee suggested Appellant retain counsel, which eventually he did. What transpired at the hearing is, therefore, Appellant's own doing, and he cannot blame others for his choice to appear, testify, answer questions from the trial court and Appellee, or for appearing unrepresented.

Next, Appellant argues the evidence was insufficient to impose what was essentially a "constructive trust" on the guns and life insurance proceeds.[4] Despite how Appellant titled the claim, he is in fact challenging

_____

[4] In **Koffman v. Smith**, 682 A.2d 1282, 1290-91, (Pa. Super. 1996), this Court stated:

> A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. Traditionally, constructive trusts have

*(Footnote Continued Next Page)*

the weight, not the sufficiency of the evidence. ***See*** Appellant's Brief at 15 (evidence offered at the April 17, 2013 hearing "was not so clear and precise" to impose a constructive trust). To this end, Appellant points to various portions of his own testimony suggesting the weakened condition and dependence of decedent was not so severe as to render him incapacitated. The trial court, however, believed other parts of Appellant's testimony indicating that decedent, at relevant times (*i.e.*, the times when the gifts were made, January 2012), suffered from dementia. ***See*** Trial Court Opinion, 10/4/13, at 10-11; ***see also*** N.T., 4/17/13, at 10, 15. The

---
*(Footnote Continued)*

been imposed where a party acquires legal title to property by violating some express or implied duty owed to another. Generally, an equitable duty to convey property arises only in the presence of fraud, duress, undue influence, mistake or abuse of a confidential relationship. There is, however, no rigid standard for determining whether the facts of a particular case require a court of equity to impose a constructive trust; the test is merely whether unjust enrichment can be avoided.

***Id.*** (quotation marks and citations omitted).

Appellate review of equity matters is as follows:

The trial judge, sitting in equity as a chancellor, is the ultimate fact-finder. The scope of review, therefore, is limited. The final decree will not be disturbed unless the chancellor committed an error of law or abused his or her discretion. The findings of fact made by the trial court will not be disturbed unless they are unsupported by competent evidence or are demonstrably capricious.

***Roberson v. Davis***, 580 A.2d 39, 40 (Pa. Super. 1990) (quotation marks and citations omitted).

trial court was free to believe all, some or none of the testimony. It is not our role to re-weigh the evidence in Appellant's favor.

The trial court also found Appellant, who held a power of attorney granted by McKean, occupied a position of trust to McKean. Trial Court Opinion, 10/4/13, at 13. While suffering from dementia, McKean, "through [Appellant], gifted certain guns to [Appellant], and "named himself beneficiary of [McKean]'s life insurance policy." **Id.**, at 10. "These actions constituted a breach of fiduciary duty" to McKean. **Id.**, at 10, 13 (citing **In re Shahan**, 631 A.2d 1298, 1303 (Pa. Super. 1993) for the proposition that an agent "must act with the utmost good faith in the furtherance and advancements of the interests of his principal.").[5]

Furthermore, the trial court noted Appellant, as an agent, "only ha[d] the power to gift assets on behalf of the princip[al] if that power was specifically enumerated in the power of attorney." **Id.** (citing 20 Pa.C.S.A.

_____

[5] "A confidential relationship while not confined to any specific association of parties, . . . generally exists between . . .principal and agent." **Shydlinski v. Vogt**, 179 A.2d 240, 242 (Pa. 1962) (quotation marks and citation omitted); **see also Biddle v. Johnsonbaugh**, 664 A.2d 159, (Pa. Super. 1995) ("A confidential relationship is deemed to exist as a matter of law between a trustee and _cestui que trust,_ guardian and ward, attorney and client, and principal and agent.") (citation omitted). "The mere finding of such a relationship does not in itself cause a constructive trust to be imposed; its effect is simply to impose a burden upon the party benefiting from the transaction of proving that he took no unfair advantage of his relationship with the other." **DePaul v. DePaul**, 429 A.2d 1192, 1194 (Pa. Super. 1981) (citation omitted).

§ 5601.2;[6] *Metcalf v. Pesock*, 885 A.2d 539, 541 (Pa. Super. 2005)).

Here, as the trial court noted, "[Appellant] never presented evidence that

the power of attorney explicitly granted him the power to gift the decedent's

_____

[6] In relevant part, Section 5601.2, reads as follows:

**Special rules for gifts**

**(a) General rule.--**A principal may empower an agent to make a gift in a power of attorney only as provided in this section.

**(b) Limited gifts.--**A principal may authorize an agent to make a limited gift as defined under section 5603(a)(2) (relating to implementation of power of attorney) by the inclusion of:

(1) the language quoted in section 5602(a)(1) (relating to form of power of attorney); or

(2) other language showing a similar intent on the part of the principal to empower the agent to make a limited gift.

**(c) Unlimited gifts.--**A principal may authorize an agent to make any other gift only by specifically providing for and defining the agent's authority in the power of attorney.

20 Pa.C.S.A. § 5601.2(a)-(c).

Pursuant to Section 5603,

A power "to make limited gifts" shall mean that the agent may make only gifts for or on behalf of the principal which are limited as follows:

(i) The class of permissible donees under this paragraph shall consist solely of the principal's spouse, issue and a spouse of the principal's issue (including the agent if a member of any such class), or any of them.

20 Pa.C.S.A. § 5603(a)(2)(i).

assets. And yet, the evidence presented at the April 17 [h]earing demonstrated that [Appellant] did, in fact, gift guns and money to himself."

*Id.*

Appellant argues the trial court erred on this issue, without specifically addressing the trial court's reasons just summarized. Appellant argues the gift of guns and life insurance proceeds to Appellant were valid despite the fact Appellant was an agent of McKean because McKean offered the gifts to Appellant in return for services rendered. According to Appellant, such rule applies even if the donor was weakened and dependent at the time he made the gifts. In support, Appellant cites, in the following order, ***Joseph v. Eastman***, 344 F.2d 9 (3d Cir. 1965), ***Estate of Meyers***, 642 A.2d 525 (Pa. Super. 1994), ***Williams v. McCaroll***, 97 A.2d 14 (Pa. 1953), and ***Estate of Augustine***, 695 A.2d 836 (Pa. Super. 1997).

The caselaw Appellant relies upon is inapposite. With regard to ***Joseph***, the court of appeals did not apply Pennsylvania law, as such its authoritativeness is limited. ***Meyers*** deals with the determination of property rights among parties to a joint account, which is not the case here. ***Williams*** deals with the burden of proof as to testamentary capacity, which is not at issue here. ***Augustine***, the only case dealing with a power of attorney, is cited for the proposition that a wife had authority to transfer her husband's real property to herself, pursuant to a broad power of attorney, regardless of the self-dealing nature of the gift to herself. Appellant fails to

recognize **Augustine** was overruled by enactment of 20 Pa.C.S.A. § 5601.2. **See also Metcalf**, 885 A.2d at 541.

In light of the foregoing, we conclude the trial court did not err or abuse its discretion in refusing to reopen the proceedings and in ordering the return of the firearms and the life insurance proceeds with six (6) percent interest from 5/6/13.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2014