## U.S. Fidelity and Guaranty Co. v. Franks (No. 2)

*Brady R. Johnson,* for plaintiff.
*Ron Turo,* for defendants.

HESS, *J.,* February 20, 1991—This case arises from an automobile accident, which occurred on September 13, 1987, in which John Michael Franks, one of the defendants herein, was seriously injured.

At the time, he was a passenger in a third party's vehicle. The defendant successfully recovered damages from the third party and subsequently applied through his father's insurance carrier (plaintiff herein) for underinsured benefits. A dispute has arisen over the amount of underinsured motorist coverage available to the defendants under their policy. The Franks assert that they were entitled to coverage of up to $100,000, an amount equal to their policy's liability limit. The plaintiff, United States Fidelity and Guaranty Company, insists that underinsured motorist coverage is limited to $35,000 due to an election made by Russell Franks some two years prior to the accident.

The plaintiff has sought a declaratory judgment to the effect that the underinsured motorist coverage is no more than $35,000. By opinion and order dated March 29, 1990, following trial without a jury, we found that the underinsured motorist coverage in defendant's policy was limited to $35,000. This finding was predicated on a voluntary election made by Russell Franks, the named insured, to reduce such coverage. We went on to find that John Michael Franks was bound to the same limits of coverage by his father's election.

## DISCUSSION

The defendants assert that we erred in our finding for three reasons: First, in finding that John Michael Franks was bound by the election of his father, Russell Franks; second, that we abused our discretion by allowing the plaintiff to reopen its case and call Russell Franks as on cross-examination; and third, that the language of the original insurance policy in failing to separately define underinsured

motorist coverage, prevented Russell Franks from understanding the nature of his election.

With respect to the defendants' claim that John Michael Franks, an insured on the policy, is not bound by his father's election to reduce underinsured motorist coverage, it is clear from the insurance agreement that Russell Franks, the "named insured," was the contracting party. He entered into this contract not only in his own right but on behalf of those family members who were otherwise named as insureds on the policy. The policy defined "insured" as including a family member. The term "family member" was, in turn, defined as meaning a person related to the named insured by blood, marriage or adoption who is a resident of the same household. The Pennsylvania Motor Vehicle Financial Responsibility Act, Pa.C.S. §1734, provides that a request for lower or higher limits of underinsured motorist coverage must be requested in writing by the *named insured.* There is no procedure for a similar election by other covered persons.

In the case of *Liberty Mutual Fire Insurance Co. v. Lindsay,* 3 D.&C. 4th 659 (1989), the York County court found that the execution of a waiver by a named insured had the effect of reducing uninsured/underinsured motorist coverage even as to another named insured spouse, notwithstanding the fact that the latter had not executed the waiver. We have reached a similar conclusion in the most recent opinion filed to *Hepler v. Liberty Mutual Fire Insurance Co.,* 7 D.&C. 4th 521 (1990). If one named insured can bind another named insured, then, clearly, he may act on behalf of one whose only right to coverage under the policy is as a family member. In sum, John Michael Franks had the freedom to contract on his own behalf for coverage he deemed appropriate. However, his election to be

covered by his father's policy meant that he was bound by that policy's limits of liability.

The next claim of error alleges impropriety in allowing the plaintiff to reopen its case. At the conclusion of the plaintiff's case, the defense rested without testimony. The plaintiff, obviously assuming that the defendant would be called and subject to cross-examination, then requested permission to reopen its case to call the defendant as on cross-examination. This we permitted it to do. While authority in this area is not abundant, we are satisfied that it is within the sound discretion of the court to allow a party to reopen its case to adduce additional testimony. The Supreme Court of Pennsylvania has stated the purpose of this prerogative: "A case may be reopened especially where it is desirable that additional testimony be taken in the interest of a more accurate adjudication and where an honest purpose would be justly served without unfair advantage." *Commonwealth v. Beck,* 522 Pa. 194, 203, 560 A.2d 1370, 1374 (1989). In this case, the plaintiff reopened to establish, inter alia, that Russell Franks had executed the election in question. Telling, in his testimony, was his admission that he had done so to reduce his premium. We believe the purpose in adducing this testimony was honest. Given the fact that the plaintiff had the right, in the first instance, to call the defendant as on cross-examination, we see no unfair advantage to them in having permitted them to reopen the case for the same purpose.

In their final contention, the defendants are correct that their insurance policy failed to notify them of *any* underinsured coverage available to them. On the other hand, the testimony at the trial revealed that, in or around October 1984, certain supplemental materials were forwarded to the insured. Specif-

ically, Mr. Russell Franks was sent the required notices concerning the election of underinsured benefits in amounts less than his liability coverage. In the same packet was an amendment to his policy, replacing part C thereof. In that amendment the details of underinsurance coverage were explicitly discussed. The testimony of the case reveals, further, that it was more than 18 months after Mr. Franks received these materials that he executed the written election to lower his underinsured motorist coverage. The signed election, in turn, made specific reference to underinsured coverage. We therefore find the contention, on his part, that he was unaware of the underinsured component of his policy to be without merit.

## ORDER

And now, February 20, 1991, for the reasons stated in our opinion of even date herewith, the post-trial motions of the defendants are denied.