## Commonwealth v. Granese

*Robert F. Falin, deputy district attorney,* for Commonwealth.
*Joseph J. Hylan,* for defendant.

ROGERS, *J.,* July 2, 2010—

## I. INTRODUCTION

Charles Angelo Granese (petitioner) has appealed to the Superior Court of Pennsylvania from our order dated

December 4, 2008 dismissing his petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §9541 et seq. We believe petitioner's appeal is without merit.

## II. PROCEDURAL BACKGROUND

Following a 16-day jury trial commencing on December 8, 2005 and concluding on December 30, 2005, petitioner was convicted of first-degree murder,[1] possession of an instrument of crime with intent to employ it criminally,[2] and false reports to law enforcement authorities.[3] Petitioner was found not guilty of third-degree murder.[4] The offense of possession of weapon with intent to employ criminally[5] was withdrawn. Petitioner was sentenced to life without parole on the first-degree murder conviction. The court assessed no further penalty.

The facts underlying these convictions are as follows. Between 10:30 p.m. and 11 p.m. on July 3, 2005, petitioner brutally stabbed and murdered his wife, Christine Granese (victim or wife). During the struggle that ensued, petitioner stabbed the victim repeatedly in the chest, face and back. Petitioner slit his wife's throat from side to side leaving a large gaping wound on her neck. An autopsy performed on her body on July 4, 2005 showed that the victim suffered 10 lethal stab wounds to her body and multiple defensive stab wounds to her hands.

---

1. 18 Pa.C.S. §2502(a).
2. 18 Pa.C.S. §907(a).
3. 18 Pa.C.S.§4906(b)(1).
4. 18 Pa.C.S. §2502(c).
5. 18 Pa.C.S. §907(b).

The most significant of the wounds was one that passed through the victim's chest wall and penetrated the aorta, where the coroner found 500 ccs. of blood and clots in the left pleural cavity. (N.T. trial, 12/14/05, pp. 36-37.) Additionally, there was a massive neck wound that started just to the right side (of the neck) and continued up toward the ear on the left side where it cut through the victim's carotid artery. This was a very deep cut, which sliced through the skin and musculature in the victim's neck. (N.T. trial, 12/14/05, p. 40.) Both chest and neck wounds were fatal wounds.

In the months preceding her murder, the victim discovered that her husband was having an extramarital affair with a woman, Andrea Maslanka, who worked for him. As petitioner's obsession with this woman became more apparent, the victim started confronting petitioner about his behavior. The victim hired a private investigator, who confirmed the relationship between petitioner and Andrea Maslanka. The relationship with Maslanka became all consuming to petitioner, to the distress of his wife and family.

On July 2, 2005, petitioner and his wife were scheduled to travel to their shore home in New Jersey for the July 4 weekend. The victim left on Friday, July 1, 2005, but petitioner stayed behind to see Ms. Maslanka. Andrea Maslanka had an angry exchange with petitioner that evening. She told him to get out and that their relationship was ended. Petitioner left a desperate message for Maslanka begging for forgiveness. He then went to New Jersey the next morning. When petitioner arrived at the shore home, the victim confronted him and they had a

very heated argument. Petitioner made excuses to return to Pennsylvania on Saturday afternoon intending to see his paramour. Maslanka, however, did not want to see petitioner and sent him away. Petitioner returned to the shore home on the evening of Saturday, July 2, 2005 and found that his wife was gone. The victim left the shore home and returned home to Pennsylvania on Saturday, July 2, 2005. Still, petitioner and his wife continued to argue by telephone on Sunday, July 3, 2005.

On the evening of Sunday, July 3, 2005, the victim went to one of her daughters' homes to baby-sit for her granddaughter. She returned home that night between 10:30 p.m. and 11 p.m. Petitioner entered the home shortly thereafter, and savagely inflicted multiple stab wounds to the body of his wife, in a most horrific way. Petitioner brutally murdered his wife. Then, in a cold and calculating fashion, petitioner placed a call on his cellular phone to his home phone immediately after killing her. He left a loving voicemail message in an attempt to conceal his role in this most tragic murder.

Petitioner then left Pennsylvania in an attempt to perfect his alibi. He drove his Jeep back to the New Jersey shore where he stopped for gas at a Wawa Store in South Jersey and obtained a credit card receipt as "proof" of his whereabouts. Petitioner again called his wife and left a caring message on the home phone voicemail to create a false impression for the investigating police.

Petitioner left the New Jersey shore at 2 a.m. on July 4, 2005. He claimed that he was driving his Cadillac, but he was seen driving his Jeep. When petitioner returned to Pennsylvania, he hid his Jeep inside of his garage in

Bridgeport, Pennsylvania and drove his Cadillac to the residence to "discover" his wife's murder.

On July 4, 2005, at 4:10 a.m., officers of the Norristown Borough Police Department responded to 1513 Powell Street, Norristown, Pennsylvania, on the report of an unresponsive person. The officers found petitioner leaning over the lifeless body of his wife. The body was cold to the touch and covered in blood. Petitioner also had blood on his clothes. He told the officers that he had just returned from the shore and found his wife. Petitioner said that they kept large amounts of cash in the house suggesting robbery as a motive. Petitioner also mentioned that he and his wife argued recently over her spending too much money.

Members of the Forensic Sciences Unit of the Montgomery County Detective Bureau examined the scene of the homicide on July 4, 2005 and found no signs of forced entry on any of the doors or windows of the house. Several doors of the dining room hutch were fully opened and other valuables were plainly visible in the dining room. The detectives found a large sum of money beneath the hutch. The detectives ruled out robbery as a motive.

Petitioner told Montgomery County Detective Christopher Kuklentz and Lieutenant Mark Bernsteil that he arrived at the New Jersey shore sometime on Saturday, July 2, 2005 and with the exception of one return trip on Saturday afternoon, stayed there until 2 a.m., July 4. 2005.

Petitioner's daughter, Tina Singleton, said that she spoke with her mother by telephone several times throughout the weekend at the family shore home, which

is a trailer at Ocean World Trailer Park, New Jersey. Singleton said that her mother argued with petitioner throughout the weekend, and at least one of the arguments was very heated. Singleton said that her mother came to her Norristown home on Sunday evening, July 3, 2005, to baby-sit Singleton's daughter. The victim left Singleton's home between 10:30 p.m. and 11 p.m. that night. It was the last time that Singleton saw her mother alive.

On March 3, 2006, petitioner was sentenced by the undersigned. He filed a timely notice of appeal from the judgment of sentence on April 3, 2006. The undersigned, by order dated April 6, 2006, directed petitioner to file a statement of errors complained of on appeal with the court, pursuant to Pa.R.A.P 1925(b)(1). Petitioner's concise statement was timely filed on April 20, 2006. The Superior Court affirmed the judgment of sentence by memorandum opinion dated July 24, 2007.

On August 22, 2007, petitioner filed a pro se timely petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §9541 et seq. alleging ineffective assistance of his privately retained trial counsel, Francis Recchuiti, Esquire and appellate counsel, John J. Duffy, Esquire. Petitioner contended that trial counsel failed to move for mistrial based on the prosecutor's closing argument, and that appellate counsel failed to present developed arguments in his behalf.

On September 4, 2007, the undersigned appointed the office of the Public Defender of Montgomery County to represent petitioner as PCRA counsel. On February 13, 2008, Joseph J. Hylan, Esquire, assistant public defender filed an amended petition under the Post Convic-

tion Relief Act with the court. A PCRA hearing was held on April 17, 2008 and July 14, 2008.

On December 4, 2008, upon consideration of petitioner's amended PCRA petition, briefs submitted by counsel regarding same, oral argument and hearing held by the court, and the court's review of the relevant and applicable law regarding same, petitioner's petition was denied. On December 30, 2008, petitioner filed a timely notice of appeal to the Superior Court. The undersigned, by order dated January 5, 2009, directed petitioner to file a concise statement pursuant to Pa.R.A.P 1925(b)(1). Petitioner's concise statement was timely filed on January 9, 2009.

## III. ISSUES

Petitioner raises four allegations of error on the part of the court in his concise statement as follows:

"(1) The court erred by denying PCRA relief even though the Commonwealth failed to introduce evidence sufficient to justify trial counsel's failure to move for a mistrial following the prosecutor's closing argument, an argument that the trial court characterized as inappropriate, inexcusable, and unacceptable. The Commonwealth failed to demonstrate how trial counsel not moving for a mistrial had a reasonable basis designed to advance Granese's interests.

"(2) The court erred by denying PCRA relief even though the Commonwealth failed to introduce evidence sufficient to justify appellate counsel's failure to submit an adequate appellate brief that the Superior Court de-

termined as failing to present developed arguments as to two issues of arguable merit on direct appeal: (1) whether or not the court erred by refusing to suppress Granese's statements to the police; and (2) whether or not the court erred by failing to give a sufficiently curative instruction following the prosecutor's improper closing argument. The Commonwealth failed to demonstrate how appellate counsel not presenting developed arguments had a reasonable basis designed to advance Granese's interests.

"(3) The court erred by permitting the Commonwealth to reopen the PCRA hearing after the Commonwealth had closed its case so that the Commonwealth could attempt to offer evidence that trial counsel's failure to move for a mistrial had a reasonable basis designed to advance Granese's interests, something that the Commonwealth had failed to do during the first session of the hearing. The court's decision was particularly prejudicial to Granese's cause because the Commonwealth's request to reopen was occasioned by Granese's memorandum pointing out the Commonwealth's failure, a memorandum presented in good-faith reliance that the hearing had been concluded.

"(4) The trial court erred by refusing to apply the doctrine of 'law of the case' with regard to the issue of whether appellate counsel had failed to present developed arguments as to two issues of arguable merit on direct appeal. Under the doctrine of 'law of the case', the Superior (sic) had already decided, as a matter of law, that appellate counsel had failed to present such arguments, a decision that was binding on the trial court so as to award entitlement to an appeal, nunc pro tunc."

# IV. DISCUSSION

In proceedings under the PCRA, the scope of review of an appellate court is limited by the parameters of the Act. 42 Pa.C.S. §9541,[6] et seq. "Since most PCRA appeals involve, as in this case, issues raising mixed questions of fact and law, [the] standard of review is whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Strong,* 563 Pa. 455, 461 n.3, 761 A.2d 1167, 1170 n.3 (2000), quoting (*Commonwealth v. Allen,* 557 Pa. 135, 732 A.2d 582, 586 (1999)); 42 Pa.C.S. §9543.

In paragraph one of his 1925(b) statement, petitioner contends that the evidence was insufficient to justify trial counsel's failure to move for a mistrial following the prosecutor's closing argument. We believe this contention is without merit.

It is well settled that the PCRA provisions regarding ineffectiveness require no more than a constitutional ineffectiveness analysis has always required, regardless of whether the claim is posed under the PCRA or at an earlier appropriate stage of the litigation. Counsel is always presumed effective. "[T]he unshifting burden to prove ineffectiveness always rests upon [petitioner] and the defendant must always plead and prove both that counsel's performance was deficient and that actual prejudice resulted from the deficient performance." *Commonwealth v. Simmons,* 569 Pa. 405, 429, 804 A.2d 625, 639 (2001), quoting (*Commonwealth v. Pettus,* 492 Pa.

---

6. *Section 9541. Short title of subchapter*
This subchapter shall be known and may be cited as the Post Conviction Relief Act.

558, 563, 424 A.2d 1332, 1335 (1981) "(court will not consider boilerplate claims of ineffective assistance)). See also, *Commonwealth v. Morris,* 546 Pa. 296, 312, 684 A.2d 1037, 1045 (1996) (speculative claim of ineffectiveness summarily rejected; ineffectiveness claims cannot be raised in vacuum)." (citing cases)

A. *Ineffective Assistance of Trial Counsel*

In the instant matter, petitioner contends that the court erred by denying him PCRA relief even though the Commonwealth failed to introduce evidence sufficient to justify trial counsel's failure to move for a mistrial following the prosecutor's closing argument. Petitioner further contends that the Commonwealth failed to demonstrate how trial counsel not moving for a mistrial had a reasonable basis designed to advance petitioner's interests. We disagree.

To prevail on an ineffective assistance of counsel claim, petitioner must show that (1) the underlying claim has arguable merit; (2) counsel did not have a reasonable basis for his actions or failure to act; and (3) petitioner was prejudiced as a result of counsel's ineffectiveness. *Commonwealth v. McGill,* 574 Pa. 574, 585, 832 A.2d 1014, 1020 (2003), citing *Commonwealth v. Pierce,* 567 Pa. 186, 203, 786 A.2d 203, 213 (2001). It is petitioner's burden to prove all three prongs of this standard and failure to prove any one prong defeats a claim of ineffective assistance of counsel. *Commonwealth v. Travaglia,* 541 Pa. 108, 118, 661 A.2d 352, 357 (1995), *cert. denied,* 516 U.S. 1121 (1996). It is not the burden of the Commonwealth as petitioner seems to suggest.

In order to succeed in the instant case, petitioner must demonstrate that his underlying claim, trial counsel's ineffectiveness for failure to move for a mistrial following the prosecutor's closing argument, did not have a reasonable basis for his actions or his failure to act. We believe that the record on its face establishes that petitioner cannot meet this burden.

Initially, the undersigned found petitioner's concise statement to be confusing when he referred to trial counsel's failure to move for a mistrial following the prosecutor's closing argument. If petitioner interpreted that to mean that he is entitled to PCRA relief on the basis that trial counsel provided him with ineffective assistance of counsel for failure to move for a mistrial following the prosecutor's closing argument, then that contention must fail. The Superior Court, in its memorandum opinion dated July 24, 2007, stated that petitioner waived his current claims:

"[Petitioner] did not object to the prosecutor's remarks at the time they were made. Rather, counsel raised a variety of objections after closing arguments ended. Accordingly, [petitioner] waived his current claims. See *Commonwealth v. Sasse,* 921 A.2d 1229, 1238 (Pa. Super. 2007) (holding the appellant waived challenges to statements in Commonwealth's closing argument where the appellant objected after the argument but failed to object or move for a mistrial during the argument).

"Moreover, even if we were to overlook the lateness of [petitioner's] objections, he would still not be entitled to a new trial. When objecting, [petitioner] did not request a mistrial but, rather, asked for curative instructions

concerning the prosecutor's improper remarks . . . ." (904 EDA 2006, p. 9.)

Alternatively, if petitioner's intention was to assert that he is entitled to PCRA relief on the basis that his trial counsel provided him with ineffective assistance of counsel because trial counsel failed to preserve his right to appeal trial counsel's failure to request a mistrial during the prosecutor's closing argument, then PCRA petitioner must establish: (1) that his underlying claim possesses arguable merit; (2) that counsel did not have a reasonable strategic basis for his course of conduct; and (3) that but for the alleged errors of counsel, there is a reasonable probability that the outcome would have been different, *i.e.,* the petitioner must establish that he was actually prejudiced by counsel's alleged ineffectiveness. *Commonwealth v. Zook,* 585 Pa. 11, 26, 887 A.2d 1218, 1227 (2005). It is further well-settled that the PCRA petitioner must satisfy each of the three prongs of this test in order to prevail upon an ineffectiveness claim. See *e.g., Commonwealth v. Wharton,* 571 Pa. 85, 98-99, 811 A.2d 978, 986 (2002).

A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs. *Commonwealth v. Basemore,* 560 Pa. 258, 295 n.23, 744 A.2d 717, 738 n.23 (2000).

We have thoroughly examined petitioner's amended petition, his memorandum of law in support of petition under PCRA, the transcripts of the PCRA hearing, and the transcript of the closing arguments at trial on December 29, 2005 on these claims. While petitioner vigorously argues the merits of the underlying claims, and

glosses over the issue of "but for" the alleged errors of counsel, there is a reasonable probability that the outcome would have been different, *i.e.,* to establish that petitioner was actually prejudiced by counsel's alleged ineffectiveness, petitioner makes a very limited argument invoking the second prong of the *Pierce* analysis which addresses whether there was any objectively reasonable basis for trial counsel's action or inaction.

The undersigned carefully reviewed the record of the hearing and concluded that while petitioner's trial counsel did indicate "probably what I should do is ask for a mistrial right now, and you know what? I don't feel like putting 14 days down the drain. I want a curative instruction on that." (N.T. July 14, 2008, p. 32.) Trial counsel also stated that there were other reasons involved as to why he did not ask for a mistrial. One of the reasons involved discussions with his client. Trial counsel met with his client in the courthouse after the conference in chambers to discuss what the alternatives were at that point because of what had occurred in the courtroom. (N.T. July 14, 2008, p. 21.) Trial counsel testified that he tried to explain to petitioner that he had the option of trying the case again, but trial counsel did not know for sure that petitioner comprehended that the mistrial in and of itself was not an acquittal. (N.T. July 14, 2008, pp. 21, 22.) Petitioner indicated to trial counsel that he did not think that he could get a fair trial, a second trial, and that up to that point he thought he had received a semblance of a fair trial. (N.T. July 14, 2008, p. 24.) Trial counsel also explained to petitioner that he would attempt to frame a curative instruction to cure what had happened.

(N.T. July 14, 2008, p. 22.) Considering the uncertainties inherent in a new trial, counsel's decision to undertake a reasonably calculated risk rather than request a mistrial cannot be said to have had no reasonable basis. Even if a mistrial could have been secured, trial counsel had reasonably concluded that the presentation of the defense had gone well and had been favorably received by the jury and that his client stood a good chance with the jury without risking a mistrial.

Trial counsel added that he was up late in the office that evening and early the next morning preparing a curative instruction. The court received trial counsel's proposed curative instruction. However, the court used its own curative instruction. The trial court properly instructed the jury and, specifically, in regard to the prosecutor's reference to petitioner as a liar and murderer.[7]

The curative instruction delivered by the undersigned must be considered along with the other instructions to the jury. When read as a whole, the instructions in their entirety properly set forth the law to the jurors and the manner in which the jury was to apply the law to the facts. *Commonwealth v. Collins,* 810 A.2d 698 (Pa. Super. 2002). As long as the law is clearly, adequately and accurately presented to the jury, a trial court has broad discretion in phrasing its instructions and can choose its own wording. *Commonwealth v. Davis,* 861 A.2d 310, 323 (Pa. Super. 2004).

---

7. Commonwealth noted that petitioner's trial testimony included five or six admissions that he did lie.

The petitioner points to no error of law, which the trial court committed in the cautionary instruction, which it gave to the jury. Therefore, no new trial is warranted. Moreover, while trial counsel speculated as to other wording he would have preferred, petitioner points to no law, which holds that the jury must be given instructions in trial counsel's wording. Accordingly, we have no basis upon which to grant petitioner relief on this claim.

## B. *Ineffective Assistance of Appellate Counsel*

Petitioner next contends that the court erred by denying PCRA relief to him even though the Commonwealth failed to introduce evidence sufficient to justify appellate counsel's failure to submit an adequate appellate brief which the Superior Court determined failed to present developed arguments as to two issues of arguable merit on direct appeal: (1) whether or not the court erred by refusing to suppress petitioner's statements to the police; and, (2) whether or not the court erred by failing to give a sufficiently curative instruction following the prosecutor's improper closing argument. Additionally, petitioner contends that the Commonwealth failed to demonstrate how appellate counsel's failure to present developed arguments had a reasonable basis designed to advance petitioner's interests. We disagree.

A post-conviction claim of ineffective assistance of counsel raises a distinct legal ground, rather than an alternative theory, in support of the same underlying issue that was raised on direct appeal. Thus, ineffectiveness claims are distinct from previously litigated issues and may be brought in post-conviction proceedings. U.S.C.

254

Const. Amend. 6;[8] Pa. Constitution Article 1, Section 9;[9] 42 Pa.C.S. §§9543(a)(3),[10] 9544(a)(2).[11]

---

8. *Amendment VI. Jury trials for crimes, and procedural rights*

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

9. *Constitution of the Commonwealth of Pennsylvania*
*Article I. Declaration of rights*
" *Section 9. Rights of accused in criminal prosecutions*

"In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself."

10. *Section 9543. Eligibility for relief*

"*(a) General rule.*—To be eligible for relief under this subchapter. the petitioner must plead and prove by a preponderance of the evidence all of the following: . . .

"(3) That the allegation of error has not been previously litigated or waived."

11. *Section 9544. Previous litigation and waiver*

"*(a) Previous litigation.*—For purposes of this subchapter, an issue has been previously litigated if:

"(1) Deleted.

"(2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or

"(3) it has been raised and decided in a proceeding collaterally attacking the conviction of sentence."

First, we address petitioner's claim of error on the part of the trial court by refusing to suppress petitioner's statements to the police and by failing to give a sufficiently curative instruction following the prosecutor's improper closing argument. Petitioner's claims lack merit for the following reasons. The undersigned thoroughly examined petitioner's amended petition, his memorandum of law in support of the amended petition and the transcripts of the PCRA hearing on these claims.

In an effort to define his burden to prove trial counsel's ineffectiveness, petitioner sets forth the three prongs of ineffectiveness as outlined above in the memorandum of law. (Defendant's memorandum at 11.) Defining his burden of proof in his memorandum of law, and adequately meeting the burden of developing his substantive claims, however, are not the same thing. When it comes to demonstrating trial counsel's ineffectiveness for acting or failing to act in specific instances, petitioner has, as noted, opted for assertions of ineffectiveness rather than attempting to demonstrate how or why the outcome of the trial would have been different but for the act or omission in question. *Commonwealth v. Rios,* 591 Pa. 583, 599-600, 920 A.2d 790, 799 (2007). Counsel is presumed effective. Therefore, where petitioner failed to do more than assert that his claim has arguable merit, counsel lacked a reasonable basis for his acts or omissions, and he was prejudiced by counsel's conduct, the presumption that counsel was effective prevails. Petitioner does not meet his burden with regard to presenting claims of ineffectiveness.

With regard to petitioner's next issue, that the court erred by failing to give a sufficiently curative instruction

following the prosecutor's improper closing argument, this issue has been previously addressed above and was determined to have no merit.

Petitioner next addresses that the Commonwealth failed to demonstrate how appellate counsel not presenting developed arguments had a reasonable basis designed to advance petitioner's interests. We find no merit in this argument.

The Post Conviction Relief Act provides relief to individuals who prove they were convicted of crimes they did not commit and those receiving illegal sentences. 42 Pa.C.S. §9542.[12] "A petitioner is eligible for PCRA relief only when he proves by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances delineated in 42 Pa.C.S. §9543(a)(2)."[13] *Commonwealth v. Natividad,* 595 Pa. 188, 206,

---

12. *Section 9542. Scope of subchapter*

"This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common-law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis. This subchapter is not intended to limit the availability of remedies in the trial court or on direct appeal from the judgment of sentence, to provide a means for raising issues waived in prior proceedings or to provide relief from collateral consequences of a criminal conviction. Except as specifically provided otherwise, all provisions of this subchapter shall apply to capital and noncapital cases."

13. *Section 9543. Eligibility for relief*

"*(A) General rule.*—To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following: . . ."

938 A.2d 310, 320 (2007). One of these circumstances is ineffective assistance of counsel. 42 Pa.C.S. §9543(a)(2)(ii).[14] The (PCRA provides relief to those individuals whose convictions or sentences "resulted from ineffective assistance of counsel which, in the circumstances of

---

"(2) That the conviction or sentence resulted from one or more of the following:

"(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

"(ii) Ineffective assistance of counsel, which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

"(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

"(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

"(v) Deleted.

"(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

"(vii) The imposition of a sentence greater than the lawful maximum.

"(viii) A proceeding in a tribunal without jurisdiction."

14. *Section 9543. Eligibility for relief*

"*(a) General rule.*—To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following: . . .

"(2) That the conviction or sentence resulted from one or more of the following: . . .

"(ii) Ineffective assistance of counsel, which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place"). To obtain relief under this provision, a defendant must plead and prove that: (1) the claim underlying the ineffectiveness claim has arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) counsel's actions resulted in prejudice to petitioner. *Commonwealth v. Colins,* 598 Pa. 397, 408-409, 957 A.2d 237, 244 (2008); *Commonwealth v. Pierce,* 515 Pa. 153, 158-59, 527 A.2d 973 (1987). "A chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" *Commonwealth v. Williams,* 587 Pa. 304, 312, 899 A.2d 1060, 1064 (2006) (quoting *Commonwealth v. Howard,* 553 Pa. 266, 274, 719 A.2d 233, 237 (1998)):

"Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Pierce,* 567 Pa. 186, 203, 786 A.2d 203, 213 (2001); *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel is presumed to have been effective and the burden of rebutting that presumption rests with the Petitioner. *Commonwealth v. Basemore,* 560 Pa. 258, 277 n.10, 744 A.2d 717, 728 n.10 (2000). Instantly, petitioner's concise statement attempts to shift that burden to the Commonwealth. The law is clear. The burden remains with the petitioner.

## C. *Commonwealth's Request To Reopen the Case*

Petitioner's next contention addresses the PCRA court's decision to reopen the PCRA hearing to allow the Commonwealth to offer additional evidence, which was the testimony of trial counsel. Petitioner contends that the court erred in making this determination. We disagree.

It is well-settled that prior to rendering its verdict, a court may, in its discretion, permit the reopening of a case to present additional testimony. *Commonwealth v. Chambers,* 546 Pa. 370, 396, 685 A.2d 96, 109 (1996), *cert. denied,* 522 U.S. 827 (1997); *Commonwealth v. Tharp,* 525 Pa. 94, 98, 575 A.2d 557, 558-59 (1990); *Commonwealth v. Irving,* 485 Pa. 596, 603, 403 A.2d 549, 552 (1979), *cert. denied,* 444 U.S. 1020 (1980); *Commonwealth v. Rizzi,* 402 Pa. Super. 335, 339, 586 A.2d 1380, 1382-83 (1991); *Commonwealth v. Campbell,* 298 Pa. Super. 23, 26, 444 A.2d 155, 157 (1982). Such a ruling will be disturbed only if the court has abused its discretion. *Chambers,* 546 Pa. at 396, 685 A.2d at 109; *Tharp,* 525 Pa. at 98, 575 A.2d at 558-59; *Beaumont v. ETL Services Inc.,* 761 A.2d 166, 168 (Pa. Super. 2000).

A court should ordinarily allow a case to be reopened where further testimony would serve the interest of a more accurate adjudication and where an honest purpose would be justly served without unfair disadvantage. *Commonwealth v. Beck,* 522 Pa. 194, 560 A.2d 1370 (1989); *In re J.E.F.,* 487 Pa. 455, 458, 409 A.2d 1165, 1166 (1979); *Beaumont v. ETL Services Inc.,* 761 A.2d at 168; *Beneshunas v. Independence Life and Accident Insurance Co.,* 354 Pa. Super. 391, 398, 512 A.2d 6, 9

260

(1986). Moreover, the Pennsylvania Supreme Court has found it both common practice and proper for the court to reopen a case to introduce additional evidence after a party has rested, where a party has omitted evidence by accident, inadvertence, or, as here, because of mistake as to its necessity. See *In re J.E.F.,* 487 Pa. at 458-59, 409 A.2d at 1166; *Seaboard Container Corp. v. Rothschild,* 359 Pa. 51, 56, 58 A.2d 800, 802 (1948).

The general practice holds that when a party rests after completing a phase of the trial, his or her presentation of evidence with regard to that phase is completed. The trial court may permit a party to reopen his or her case. Ordinarily, a court should permit a party to reopen his or her case where it is in the interest of a more accurate adjudication, making the presentation more effective for the determination of the truth, and will not create an unfair disadvantage. See *Commonwealth v. Beck,* 522 Pa. 194, 560 A.2d 1370 (1989). The trial court should not permit reopening where it would lead to unfair prejudice. *Van Buren v. Eberhard,* 377 Pa. 22, 104 A.2d 98 (1954); *Duncan v. McCullough,* 4 Serg. & Rawle 480, 1818 WL 2186 (Pa. 1818). Reopening by the plaintiff has been permitted, however, even after petitioner has argued in support of a nonsuit. *Van Buren v. Eberhard,* 377 Pa. 22, 104 A.2d 98 (1954).

In the instant matter, the undersigned determined that to reopen the case to allow the Commonwealth to present the testimony of trial counsel would certainly support a more accurate adjudication, making the presentation more effective for the determination of the truth, and would not create an unfair disadvantage to the petitioner as a result of the decision to permit trial counsel

the opportunity to testify regarding the allegations of his ineffectiveness.

## D. *Law of the Case*

Petitioner contends that the trial court erred by refusing to apply the doctrine of "law of the case" with regard to the issue of whether appellate counsel failed to present developed arguments as to two issues of arguable merit on direct appeal. We disagree.

Petitioner argues that under the doctrine of "law of the case", the Superior (sic) had already decided as a matter of law that appellate counsel failed to present such argument, a decision that was binding on the trial court so as to award entitlement to an appeal nuns pro tunc. The law of the case doctrine applied to preclude the Superior Court from revisiting the issue of whether sufficient evidence supported a rape conviction. The Superior Court's previous decision on this issue was not based upon arguments or briefs, but upon the entire trial record and all evidence actually received, and the defendant had benefit of submitting an appellate brief during his original direct appeal, and thus had prior opportunity to argue sufficiency of the evidence. *Commonwealth v. O'Bidos,* 849 A.2d 243, 252-53, (Pa. Super. 2004), citing (*Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326 (1995)).

"Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) *upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court;*

and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court. *Starr,* 541 Pa. at 574, 664 A.2d at 1331 (citations omitted and emphasis added) (quoted by *Commonwealth v. Viglione,* 842 A.2d 454, 462 (Pa. Super. 2004))." *O'Bidos,* 849 A.2d at 252.

"Departure from the law of the case doctrine is allowed only in exceptional circumstances such as (1) where there has been an intervening change in the controlling law, (2) a substantial change in the facts or evidence giving rise to the dispute in the matter, or (3) where the prior holding was clearly erroneous and would create a manifest injustice if followed. *Starr,* 541 Pa. at 575-76, 664 A.2d at 1332 (quoted in *Viglione,* 842 A.2d at 464)." *O'Bidos,* 849 A.2d at 253.

Instantly, petitioner's position regarding the doctrine of law of the case is that the doctrine controls the instant matter because the Superior Court has already decided and found that appellate counsel failed to present developed arguments on the two issues set forth above which the undersigned presumes are the following: (1) whether or not the court erred by refusing to suppress petitioner's statements to the police; and (2) whether or not the court erred by failing to give a sufficiently curative instruction following the prosecutor's improper closing argument. The undersigned is making a presumption that petitioner is referring to these issues because petitioner did not specifically state them in the concise statement. However, petitioner stops one sentence short because the memorandum opinion of the Superior Court goes on to state the following regarding the suppression issue:

"Having not presented an argument that he was in custody when questioned, [petitioner] cannot prevail. Moreover, our own review of the record convinces us that an argument contending [petitioner] was in custody simply could not succeed . . . ." (904 EDA 2006, p. 6.)

With regard to the jury instructions, the Superior Court indicated in its non-precedential decision that:

"[Petitioner] develops no argument that the jury instructions were insufficient. Rather, he asks for a new trial based on the impropriety of the closing argument. Having asked for curative instructions and not having presented to us an argument that the instructions were insufficient, [petitioner] is not entitled to a new trial." (904 EDA 2006, p. 10.)

In a footnote, the Superior Court stated:

"In fact, even if [petitioner] did develop for us an argument that the instructions were insufficient to cure the impropriety of the Commonwealth's closing argument, we would not entertain that argument because [petitioner] did not raise specific objections to the instructions." (904 EDA 2006, p. 10.)

Petitioner did raise appellate counsel's ineffectiveness regarding this issue, which requires the *Pierce* analysis be completed. Generally speaking, the test for counsel's ineffectiveness is well-settled. Under *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987), a defendant must establish (1) that the underlying issue has arguable merit; (2) that counsel did not have a reasonable basis for his or her actions; and (3) that prejudice resulted from counsel's performance. *Id.* at 157-58, 527 A.2d at 975. It is also well-settled that counsel will not be deemed

ineffective for failing to raise a baseless issue and that it is only when the underlying issue is of arguable merit that further inquiry must be made into the reasonableness for counsel's actions and the prejudice that counsel's actions may have caused. See *Commonwealth v. Hutchinson,* 521 Pa. 482, 486, 556 A.2d 370, 372 (1989). Instantly, counsel mentioned the three prongs of this test and proceeded to argue the underlying claim in substantial detail, but gives boilerplate attention to the *Pierce* analysis. Therefore, petitioner has failed to establish that direct appeal counsel was ineffective.

## V. CONCLUSION

For all of the foregoing reasons, we respectfully request that the order dated December 4, 2008 dismissing petitioner's petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §9541 et seq. (PCRA) be affirmed.